JOHN W. PHILSON, APPELLEE, v. CITY OF OMAHA, NEBRASKA, ET AL., APPELLEES, OMAHA CONSTRUCTION & BUILDING TRADES COUNCIL ET AL., INTERVENERS-APPELLANTS.

93 N. W. 2d 13

Filed November 21, 1958. No. 34402.

*David D. Weinberg,* for appellants.

*Smith & Smith,* for appellee Philson.

*Herbert M. Fitle,* for appellees City of Omaha et al.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

CARTER, J.

This is a suit by a taxpayer of the city of Omaha. In his first cause of action he prays for a declaratory judgment determining his rights, status, and legal relations with reference to Ordinances Nos. 18515 and 18743 of the city of Omaha and proceedings had thereunder; that such ordinances be declared null, void, and unenforcible; and that the specifications for improvements in Special Improvement District No. 5116 insofar as they contain a requirement for a minimum wage be declared null, void, and unenforcible. In his second cause of action the plaintiff prays for injunctive relief against the city and its officers in enforcing or attempting to enforce said

ordinances by including in its specifications for project No. 5116 any predetermined minimum or other wage scale which a bidder must agree to pay.

The answer of the city and its officers alleges that Ordinances Nos. 18515 and 18743 are legal and valid; that the fixing of the wage scale as provided in said ordinances is legal and valid; and that the prayer of plaintiff's petition should be denied.

The interveners are the Omaha Construction & Building Trades Council and the hod carriers', operating engineers', and common laborers' local unions. They allege an interest in the result of the litigation and assert the validity of the said ordinances and the proceedings had under them. They pray that such ordinances and the proceedings had under them be held valid and enforcible. The prayer of the interveners is that the prayer of plaintiff's petition be denied.

The trial court held that Ordinances Nos. 18515 and 18743 were invalid; that the city of Omaha was without power to require such wage scale requirement by ordinance; and that contracts by the city for public improvement must be let to the lowest responsible bidder. The interveners have appealed to this court.

It is stipulated in the record that the cost of one-half of the grading, curbing, and paving in Special Improvement District No. 5116, here involved, will be paid by the city of Omaha because a public park abuts on one side of the street where the improvement is to be made. It is further stipulated that the plaintiff is a taxpayer of the city of Omaha, regularly paying money into its treasury as a general taxpayer for public purposes. The right of the plaintiff to maintain the action is not and could not be successfully questioned.

The city of Omaha is a city of the metropolitan class operating under a home rule charter. A home rule charter is a grant of power to a city as distinguished from a limitation of general power. The grant of power is to be construed strictly in favor of the public and against

the public officials of the charter city. Where the charter specifies a method of exercise of a power, such method constitutes the measure of the power. A city council cannot, therefore, extend its powers by the enactment of an ordinance beyond the limits prescribed in its charter. Manners v. City of Wahoo, 153 Neb. 437, 45 N. W. 2d 113; Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490.

The record shows that the city council of the city of Omaha called for bids for work in Special Improvement District No. 5116. The specifications for such bids required the bidders to comply with a predetermined minimum wage scale which had been adopted in accordance with the provisions of Ordinance No. 18743. The home rule charter of the city required all bids to be let to the lowest responsible bidder. It is the contention of the plaintiff that the ordinance fixing a minimum wage scale which bidders would be required to observe contravenes the charter provision that bids shall be let to the lowest responsible bidder.

The question presented is one of first impression in this state. We think the reasoning contained in Hillig v. City of St. Louis, 337 Mo. 291, 85 S. W. 2d 91, controls the disposition of the case at bar. The court there said: "In this State it is well settled that charter provisions requiring that contracts for public work be awarded, upon a public letting, to the lowest responsible bidder are intended to secure free and unrestricted competition among bidders, to eliminate fraud and favoritism and to avoid undue or excessive cost which would otherwise be imposed upon the taxpayer or property owner. (Citing cases.) As a corollary to the elementary principle just stated our courts hold in general that where in the letting of contracts for public work restrictions or conditions are imposed upon bidders, which tend to increase the costs of the work such conditions and restrictions are violative of charter provisions requiring that the contract for the work be let to the lowest responsible bid-

der. (Citing cases.) Applying the foregoing principles to the case before us we are clearly of the opinion that Ordinance No. 40179 is void because it is in contravention of the provisions of the St. Louis charter requiring that 'all public work' be awarded by contract to the 'lowest responsible bidder.' The ordinance, if effective, permits bidding only by those contractors who agree to pay the prescribed minimum wages. Other contractors who might, if permitted, do the work for a lower price are prohibited from bidding or performing the work by the terms of the ordinance. Thus we have a situation where a contractor who can do the work equally as well, although cheaper, is excluded from bidding, while the ordinance clearly contemplates that the successful bidder will do the work at a cost which will at least equal the minimum amount specified for wages by the ordinance in question. Furthermore, since the ordinance in question requires all bidders for public work to pay a stipulated minimum wage to their employees it is clear that the ordinance imposes a limitation other than responsibility upon all bidders and hence the free competition prescribed by the charter is excluded and stifled." See, also, Marshall & Bruce Co. v. City of Nashville, 109 Tenn. 495, 71 S. W. 815; Bohn v. Salt Lake City, 79 Utah 121, 8 P. 2d 591; Frame v. Felix, 167 Pa. 47, 31 A. 375, 27 L. R. A. 802.

In Wright v. Hoctor, 95 Neb. 342, 145 N. W. 704, 52 L. R. A. N. S. 728, Ann. Cas. 1915D 967, this court, in discussing an ordinance fixing wages in contracts for public works, quoted the following with approval: "Here we have an ordinance saying, not that a sum no less than the going wage for like labor shall be paid, but that a fixed sum irrespective of going wages or the worth of the employee shall be paid. In the instant case, the wages paid are from 50 to 90 cents higher for eight hours than are wages paid in private employment for like labor for ten hours. To hold this arbitrary resolution to pay an excess of wages to be reasonable, reference to some

fixed principle of law must be had. It would seem that no such reference can be had. * * * If a council can pay $3 when the current wage is $2.25, they can fix the price of commodities entering into the construction of a public work and provide that material must be purchased of certain persons or firms when the same commodity might be had of others at a less price. Under such a system there would be no limit to the 'discretion' of the city officers, who to serve personal or political ends might burden the taxpayer beyond the point of endurance. In cases of this character it is well to recur to fundamental principles for our guidance, one of the most salutary of these being that all municipal ordinances shall be reasonable, to the end that a favor to one citizen shall not find sustenance in the burden of another."

We necessarily conclude that the ordinances in question are inimical to the provisions of the home rule charter that public contracts shall be let to the lowest responsible bidder. They are therefore void and unenforcible.

The appellants urge that the ordinances here questioned can be upheld as being an implementation of sections 73-101 to 73-105, R. R. S. 1943, relating to public lettings. Insofar as applicable here, these statutory provisions provide that the state and its governmental subdivisions, in awarding contracts for public works, shall require bidders to file a statement that they will pay a wage scale and maintain conditions of employment as are paid and maintained by at least fifty percent of the contractors in the same business or field of endeavor as the contractor filing such statement. This is a penal statute providing that violations shall be punished by fines fixed by the act. The foregoing statutes require compliance with the fair labor standards contained in the act at the time the work is performed. The fixing of an arbitrary wage scale before the public work is let to bidders, which must be followed irrespective of the

wages paid by fifty percent or more of the contractors in the same business or field of endeavor as the successful bidder at the time the work is performed, does not implement such statutes but, in fact, provides a new condition having no relation thereto. There is a constitutional difference in a legislative act providing that a sum no less than the going wage for like labor shall be paid and one providing for a fixed sum irrespective of going wages or the worth of the employee. The former is generally upheld as a proper fair labor standard while the latter is held to be violative of Article I, section 3, of the Nebraska Constitution, in that it would take the private property of the taxpayer without due process of law. This principle was declared by this court in Wright v. Hoctor, *supra,* wherein we said: "And there should be no fixed rate of wages provided by the legislature, without reference to the going wages for that kind of work at the time and place where it is to be performed. The contracts were not let so as to admit of competition. Section 128, ch. 17, laws 1909, contains a provision that contracts of this character shall be awarded 'to the lowest responsible bidder of the class (of material) so designated.' The manner of letting these contracts would take the private property of the taxpayer without due process of law, and is in violation of section 3, art. I, of the Bill of Rights."

The trial court having arrived at the same conclusion, the judgment of the district court is affirmed.

AFFIRMED.

WENKE, J., participating on briefs.